## EX PARTE J. W. GILMORE.

### No. 5891.  Decided December 1, 1920.

### Rehearing denied February 23, 1921.

**1.—Intoxicating Liquors—Transportation—Constitutional Law—Habeas Cor-
pus.**

Where relator was indicted for unlawfully transporting intoxicating
liquors in this State, in violation of the act of the Thirty-sixth Legislature,
known as the Dean Law, and sought release before this court on the ground
that the Eighteenth Amendment to the Constitution of the United States
must be construed in connection with the clause of the Constitution making
it and the laws of Congress passed thereunder paramount, and that so con-
strued said Act of the Legislature of Texas in prescribing a definition of
intoxicating liquor and a penalty different from those prescribed by Con-
gress is inoperative:  Held, such contention is untenable and the relator
is remanded to custody.

**2.—Same—Decision of Supreme Court of United States—Constitutional Law.**

This court understands that the Supreme Court of the United States
has decided that the Eighteenth Amendment was legally adopted; that
by it the traffic in intoxicating liquors for beverage purposes was forbidden;
that no law of Congress nor any State could make such traffic lawful; that
Congress was given power to enforce the prohibition by appropriate legis-
lation without reference to whether the State did or did not legislate upon
this subject, and that this power was not exclusive in Congress.  Following
Rhode Island v. Palmer, 252 U. S., 612.

**3.—Same—Judicial Construction—U. S. Supreme Court.**

Considering the matter that was before the Supreme Court of the United
States for decision—in connection with the several opinions filed, we are
not prepared to accept the view that it was decided that the second section
88 Tex.—34.

of the Eighteenth Amendment conferred upon the State no power, and left in it no reserve power that it would not have possessed had the second section been omitted. Following Rhode Island v. Palmer, *supra*.

4.—Same—Judicial Construction—Constitutional Law—State and Federal Legislation.

This court understands that it was not decided by the Supreme Court of the United States that the passage of a law by Congress would exclude the power of the State to pass an enforcement Act, or one adopting means of making the law effective different from those adopted by Congress, nor that it was decided that the State might not enforce a law appropriate to make the prohibition effective, in which law the percentage of alcohol contained in the beverage prohibited was greater than that prescribed by Congress. Following Rhode Island v. Palmer, *supra*. Davidson, Presiding Judge, dissenting.

5.—Same—State and Federal Legislation—Concurrent Power to Enforce Law.

The impotence of the State, in view of the Federal law, to render lawful the manufacture, sale, or transportation of a beverage containing more than one-half of one per-cent of alcohol does not imply that the State, in the exercise of its judgment, could not elect to punish persons who dealt in intoxicants containing one per-cent, or more, of alcohol; and its refusal to punish where the percentage of alcohol was less than one per cent would not obstruct or impede the right of the Federal government to do so under its own law. Davidson, Presiding Judge, dissenting.

6.—Same—Constitutional Law—Judicial Construction.

If the second section of the Eighteenth Amendment had been omitted, Congress would not have been without power to enforce the prohibition; and the State would like-wise have had authority subordinate to that of Congress, and instead of these implied powers, the Second Section of the amendment would seem to make express, definite and secure the concurrent power of Congress and the states. Davidson, Presiding Judge, dissenting.

7.—Same—Concurrent Power—Federal and State Legislation.

The framers of the Amendment, having selected language specifically conferring upon the States concurrent power to enforce the prohibition by appropriate legislation, in our opinion, did not intend that the State's legislation should be identical with that of Congress, nor that it should be confined to the enforcement of the laws of Congress.

8.—Same—Different Penalties—State and Federal Legislation—Rule Stated.

The difference in the penalty prescribed by Congress and the State, would not condemn the State law as unconstitutional. Following Houston v. Moore, 5 Wheaton, 1, and other cases.

9.—Same—Concurrent Enforcement—Constitutional Law.

We have found nothing in the meaning of the term "concurrent," as defined in the reported cases or the dictionaries, which leads us to conclude that as used in the Eighteenth Amendment to the Constitution it was intended that the right of the States to pass appropriate legislation to enforce the prohibition should be more restrictive than the power conferred upon Congress to affect the same result, save that the laws of Congress should affect all the people in the United States, while the laws of the State should affect only those within its boundaries. Following Commonwealth v. Nickerson, Supreme Court of Mass., recently decided.

**10.—Same—Case Stated—Transportation of Intoxicating Liquors.**

Satisfied that the State may punish the unlawful transportation of intoxicating liquors as in the instant case; that in the Act in question it has furnished the means of doing so, and that the indictment charges the relator with the violation of law, his application for writ of *habeas corpus* is denied. DAVIDSON, Presiding Judge, dissenting.

**11.—Same—State and Federal Legislation—Concurrent Power.**

In the second section of the national Amendment, the grant to Congress and the several States is not of power to enforce by appropriate concurrent legislation, but is of concurrent power to enforce by appropriate legislation; it is the power to enforce which is made concurrent.

**12.—Same—Supreme Court of the United States—Rule Stated—Motion for Rehearing.**

Whenever the Supreme Court of the United States speaks upon this question, and we should find our views contrary to the ones entertained by that high tribunal, it will be our duty to conform to the opinion of that court, but we have been unable to reach the conclusion that it has already so spoken, and the motion for rehearing is overruled.

From Collin County.

Original *habeas corpus* proceedings, asking release from arrest under an indictment for unlawfully transporting intoxicating liquors, under the so-called "Dean Law."

The opinion states the case.

*Williams, Dougherty & Muse,* for relator.—Relator contends that Article 6, Section 2, Constitution of the United States, must be construed in a manner that will permit both the acts of Congress and the Legislature to stand, if possible, and in such a manner that one provision will not be repugnant to the other, and that the Eighteenth Amendment must be read with reference to Article 6 Section 2, *supra,* and that when that is done, relator contends that the concurrent power saved to the States in the Eighteenth Amendment requires that when such power is exercised, it must be consistent with and not antagonistic to any acts of Congress at that time existing, and that the Federal government has the right to demand that any State legislation on the same subject shall be consistent with and not repugnant to any provision of the acts of Congress on the same subject.

On question of the construction of the Dean Law and the Volstead Act:—By reason of the provisions of the U. S. Constitution, Article 6, Section 2: Gibbons v. Ogden, 9 Wheat., 1; Henderson v. New York, 92 U. S., 259; Lakeshore & M. S. Ry. Co. v. Ohio, 173 U. S., 285; Savage v. Jones, 225 U. S., 501; Illinois Central Ry. Co. v. Dougherty, 153 Kentucky, 363; McPherson v. Sec. of State, 92 Mich., 377; Mondon v. New York, N. H. & H. R. Co., 223 U. S., 1; Re Rohrer, 140 U. S., 545; McCullough v. Maryland, 4 Wheat. U. S., 316; Northern Security Co. v. U. S., 193 U. S., 197; House v. Mays, 219 U. S., 270; Kidd v. Pierson, 128 U. S., 1; United States v. Hill, 248 U. S., 420.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—Cited cases in opinion.

MORROW, Judge.—The relator is under indictment charging, among other things, the unlawful transportation of intoxicating liquors in this State, in violation of the Act of the Thirty-sixth Legislature. Chapter 78, Second Called Session, known as the Dean Law.

He seeks release upon the assertion that in passing the Act the State exceeded its power. He contends that the Eighteenth Amendment to the Constitution of the United States must be construed in connection with the clause of the Constitution making it and the laws of Congress passed thereunder paramount, and that so construed the Act of the Legislature in prescribing a definition of intoxicating liquor and a penalty different from those prescribed by Congress is inoperative. We quote the first and second sections of the Amendment:

"Section 1. After one year from the ratification of this article the manufacture, sale or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited."

"Section 2. The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation."

Before its adoption, the State possessed the exclusive power to prohibit traffic in intoxicating liquors, and to punish those who disobeyed. It was within the police power of the State. Beyond doubt, the Amendment establishes prohibition throughout the country. It is appellant's view that the power to enforce obedience to this Amendment rests in Congress, and that when this power is exerted the State is excluded from the field of legislation covered by the Act of Congress. In one of the articles of the United States Constitution, it is said:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

Prior to the adoption of the Eighteenth Amendment, from the discussion by the Supreme Court of the United States, of the powers of government, they have been divided into: Those which belong exclusively to the State, those which belong exclusively to the National Government, those which may be exercised concurrently and independently by both, and those which may be exercised by the State but only until Congress shall see fit to act upon the subject. Ex parte McNiel, 13 Wallace, 236; Port Richmond v. Board of Freeholders, 234 U. S., 330; Simpson v. Shepard, 230 U. S., 400, 48 L. R. A., New Series, 1151, and numerous cases cited in Rose's Notes on U. S. Reports, Revised Edition, Vol. 7, p. 589.

The relator maintains that by the first section of the Eighteenth Amendment the subject covered is made national in character and admits and requires uniformity of regulation, affecting alike all the

States; and that in consequence of this character, the rules of construction applied to the clause of the Constitution of the United States, conferring upon Congress the power to regulate commerce between the several States govern; and that under this construction this field of legislation is not open to the States, it having been covered by the Act of Congress known as the Volstead Act. See Chapter 85, Acts Sixty-sixth Congress, First Session. In support of this view many decisions of the Supreme Court of the United States are referred to, in which State laws have been held inoperative upon the ground that under the Constitution the nature of the power conferred upon the Congress was such that when exercised it was exclusive, and *ipso facto* superceded the existing State legislation on the subject. See Southern Ry v. Ry Commission of Indiana, 236 U. S. 446; Chicago v. Hardwick E. Co., 226 U. S., 426; Erie Ry. Co. v. N. Y., 233 U. S., 683.

The force of these decisions, and others in the same line, upon the subject in hand is dependent upon the analogy of the power conferred upon Congress by the Eighteenth Amendment and that relating to its authority over interstate commerce. If the premises were conceded, the invalidity of the State law would not necessarily follow. Many instances are found in which State statutes which affected the subject of interstate commerce, have been upheld, notwithstanding Congress had passed laws upon the same subject. Gilman v. Philadelphia, 3 Wallace, 713; Mobile v. Kimball, 102 U. S., 691; Cardwell v. River Bridge Co., 113 U. S., 205; Gloucester Co. v. Penna., 114 U. S., 186; Chicago v. Arkansas, 219 U. S., 451. And the police power of the State has been permitted to operate where it incidentally affected interstate commerce. Sherlock v. Alling, 93 U. S., 99; N. Y. N. H. & H. R. R. v. People, 165 U. S., 628. In those cases the rule is observed that the State laws must not burden or trammel the interstate commerce, or trench upon the exclusive power of Congress to regulate it, and they must yield to the Federal power in case of conflict which is so direct and positive that the two acts cannot be reconciled or consistently stand together. Ruling Case Law, vol. 5, p. 702, sec. 15; Silz v. Hesterberg, 211 U. S. 31; Haber v. Ry., 169 U. S., 613; Atlantic Coast Lines v. Wharton, 207 U. S., 328; Savage v. Jones, 225 U. S., 501.

Though there be no conflict, the Federal law in a given case may exclude the State law. It is the intent of Congress which prevails, and this the courts must determine. But we have been able to discern no fixed rule by which in all cases this may be decided; and in a case in which the State's exclusion from a field of legislation is determined by the repugnancy of its laws to those of the Federal Government, there is likewise an absence of a definite rule. In an early case it was said:

"It is no objection to the distinct substantive powers that they may be exercised upon the same subject. It is not possible to fix definitely their respective boundaries." Gilman v. Phila., *supra*. See Manigault v. Spring, 199 U. S., 478; Chicago v. Illinois, 200 U. S. 592.

The soundness of relator's claim, that the power of Congress under the commerce clause of the Constitution and that under the prohibition amendment are analogous, and the power of the States subject to the same limitations, is, in view of the second section of the Eighteenth Amendment, open to serious question. The only expressions of the U. S. Supreme Court concerning the Amendment, of which we are aware, are those found in Rhode Island v. Palmer, 252 U. S., 612. In that case it was shown that the State of Rhode Island had enacted a law defining intoxicating liquors as those containing two per cent or more of alcohol. In the Volstead Act the percentage allowed was not exceeding one-half of one per cent. An injunction was sought against the officers of the United States, restraining them from enforcing the Volstead Act, on the ground, as we understand it, that the definition fixed in the State law protected its citizens against prosecution for the traffic in intoxicating liquor which did not fall within that definition. This construction was not sanctioned by the Supreme Court. In denying the injunction the Court stated certain conclusions, which are relied on by both the relator and the State as supporting their conflicting interpretations of the prohibition amendment to the Constitution. The following quotations are taken from the opinion.

"6. The first section of the amendment—the one embodying the prohibition—is operative throughout the entire territorial limits of the United States, binds all legislative bodies, courts, public officers and individuals within those limits, and of its own force invalidates every legislative act, whether by Congress, by a State Legislature, or by a territorial assembly, which authorizes or sanctions what the section prohibits.

"7. The second section of the amendment—the one declaring "The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation"—does not enable Congress or the several States to defeat or thwart the prohibition, but only to enforce it by appropriate means.

"8. The words 'concurrent power' in that section do not mean joint power, or require that legislation thereunder by Congress, to be effective, shall be approved or sanctioned by the several States or any of them; nor do they mean that the power to enforce is divided between Congress and the several States along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs.

"9. The power confided to Congress by that section, while not exclusive, is territorially coextensive with the prohibition of the first section, embraces manufacture and other intrastate transactions as well as importation, exportation, and interstate traffic, and is in no wise dependent on or affected by action or inaction on the part of the several States or any of them.

"11. While recognizing that there are limits beyond which Congress cannot go in treating beverages as within its power of enforcement, we think those limits are not transcended by the provision of the Vol-

stead Act (title II. Sec. 1), wherein liquors containing as much as ½ of 1 per cent of alcohol by volume, and fit for use for beverage purposes, are treated as within that power. Jacob Rupert v. Caffey, 251 U. S., 264, *ante*, 138, 40 Sup. Ct. Rep., 141."

One of the judges wrote a concurring opinion which contained statements relied on by the relator. Among these are: the statement "The first section imposes a general prohibition which it was the purpose to make universal and uniformly operative and efficacious; upon Congress was cast the duty, not only of defining the prohibited beverages, but also of enacting such regulations and sanctions as was essential to make them operative and final; in dealing with the new prohibition created by the Constitution, operating throughout the length and breadth of the United States, without reference to State lines or the distinction between State and Federal power, and contemplating the exercise by Congress of the duty cast upon it to make the prohibition efficacious, it was sought by the second section to unite national and State administrative agencies in giving effect to the amendment and the legislation of Congress enacted to make is completely operative; observe also the words of the grant which confine the concurrent power given to legislation appropriate to the purpose of enforcement; limiting the concurrent power to enforce given by the second section to the purposes which I have attributed to it, that is, to the subjects appropriate to execute the amendment as defined and sanctioned by Congress, I assume that it will not be denied that the effect of the grant of authority was to confer upon both Congress and the State power to do things which otherwise there would have been no right to do."

We understand that the Court decided that the Eighteenth Amendment was legally adopted; that by it the traffic in intoxicating liquors for beverage purposes was forbidden; that no law of Congress nor any State could make such traffic lawful; that Congress was given power to enforce the prohibition by appropriate legislation without reference to whether the States did or did not legislate upon this subject; and that this power was not exclusive in Congress.

It is argued that Chief Justice WHITE, in the concurring opinion from which we have quoted, interpreted the Amendment as limiting the power of the States to the enforcement of the laws of Congress. If it be conceded that this is a correct conception of the meaning of the Chief Justice, it goes further than the opinion of the majority of the Court; and it may be reasonably inferred that the views of the majority did not coincide with those of the writer of the concurring opinion. Considering the matter that was before the Supreme Court for decision—in connection with the several opinions filed, we are not prepared to accept the view that it was decided that the second section of the Amendment conferred upon the State no power, and left in it no reserve power that it would not have possessed had the second section been omitted. The declaration "the second section of the Amendment does not enable Congress or the several States to defeat

or thwart the prohibition, but *only to enforce it by appropriate means,"* and the declaration that the power confided to Congress is not exclusive, appear not to admit of a construction denying force to the second section. The same may be said of some of the language of the Presiding Justice, notably that in which it is declared that the effect of the grant of authority was to confer upon both Congress and the States power to do things which otherwise there would have been no right to do. We are constrained to regard the opinion as intended to be decisive alone of the questions before the Court at the time. We are confirmed in this opinion by the expressions of Justice McReynolds, who, in concurring in the disposition of the case, said:

"It is impossible now to say with fair certainty what construction should be given to the Eighteenth Amendment. Because of the bewilderment which it creates, a multitude of questions will inevitably arise and demand solution here. In the circumstances I prefer to remain free to consider these questions when they arise."

An opinion by the Supreme Court of the United States, giving specific interpretation to the Amendment to the Federal Constitution, would be conclusive and binding upon this Court. In the absence of such declaration, however, and without precedents which we regard as clearly pointing to the interpretation that would be ultimately given to the Amendment by that Court, we would not feel justified in rejecting the second section of the Amendment as meaningless, and upon that theory declare a law of this State passed thereunder invalid.

We understand that it was not decided that the passage of a law by Congress would exclude the power of the State to pass an enforcement Act, or one adopting means of making the law effective different from those adopted by Congress. Nor was it, we think, decided that the State might not enforce a law appropriate to make the prohibition effective, in which law the percentage of alcohol contained in the beverage prohibited was greater than that prescribed by Congress. Under the existing laws, should an effort be made to enjoin the officers of the United States government from prosecuting in the State of Texas an individual who dealt in an intoxicating liquor fit for beverage which contained more than one-half of one per cent, the case of Rhode Island v. Palmer would be a conclusive authority against the issuance of the injunction. The impotence of the State, in view of the Federal law, to render lawful the manufacture, sale, or transportation of a beverage containing more than one-half of one per cent of alcohol does not imply that the State, in the exercise of its judgment, could not elect to punish persons who dealt in intoxicants containing one per cent or more of alcohol. Its refusal to punish where the percentage of alcohol was less than one per cent would not obstruct or impede the right of the Federal government to do so under its own law. The prosecution by the State of those who disobeyed its mandate with reference to intoxicants containing one per cent or more of alcohol, would conduce

to make effective the prohibition declared in the amendment to the National Constitution.

The term "appropriate legislation," as used in other amendments to the Constitution, has been construed by the Supreme Court of the United States to mean legislation contemplated to make the amendment fully effective; that is, legislation adapted to carry out the objects the legislators had in view. Ex parte Virginia, 100 U. S., 339; People v. Washington, 36 Cal., 658. The Law in question apparently fills this measure.

Doubtless, if the second section had been omitted from the amendment, Congress would not have been without power to enforce the prohibition; and the States would likewise have had authority subordinate to that of Congress. Instead of these implied powers, the second section of the amendment would seem to make express, definite and secure the "concurrent power" of Congress and the States.

The framers of the Amendment, having selected language specifically conferring upon the States concurrent power to enforce the prohibition by "appropriate legislation," in our opinion, did not intend that the State's legislation should be identical with that of Congress, nor that it should be confined to the enforcement of the laws of Congress. A general law adapted to all parts of the country, it is conceived, might be inadequate to meet the conditions requisite in the enforcement of the prohibition in a given State. Legislation by the State supplementing that of Congress would seem more consistent with the intent of the framers of the Amendment. Should an irreconcilable conflict develop, no doubt the provision of the Federal Constitution making that document and the laws of Congress paramount, would prevail. But neither Congress nor the State being able to thwart the prohibition, but being empowered only to enforce it, the development of such a conflict would appear remote, if not impossible. The difference in the penalty prescribed by Congress and the State would not condemn the State law as unconstitutional. On the subject of concurrent power, the Supreme Court of the United States in an early case said:

"Why may not the same offense be made punishable both under the laws of the States and of the United States? Every citizen of a State owes a double allegiance; he enjoys the protection and participates in the government of both the State and the United States. It is obvious that in those cases in which the United States may exercise the right of exclusive legislation it will rest with Congress to determine whether the general government shall exercise the right of punishing exclusively, or leave the States at liberty to exercise their own discretion. But where the United States cannot assume, or where they have not assumed, this exclusive exercise of power, I cannot imagine a reason why the States may not also, if they feel themselves injured by the same offense, assert their right of inflicting punishment also. In cases affecting life or member, there is an express restraint upon the exercise of the punishing power. But it is a

restriction which operates equally upon both governments and according to a very familiar principle of construction, this exception would seem to establish the existence of the general right. The actual exercise of this concurrent right of punishing is familiar to every day's practice. The laws of the United States have made many offenses punishable in their courts which were and still continue punishable under the laws of States. Witness the case of counterfeiting the current coin of the United States, under the act of April 21, 1806, in which the State right of punishing is expressly recognized and preserved. Witness also the crime of robbing the mail on the highway, which is unquestionably cognizable as highway-robbery under the State laws, although made punishable under those of the United States." Houston v. Moore, 5 Wheaton, 1, 5 Law Edition, 33. There are other cases sustaining State laws condemning an act made punishable by Congress under a power conferred by the Constitution. Fox v. Ohio, 5 Howard, 410; Ex parte Siebold, 100 U. S., 390; Cross v. North Carolina, 132 U. S., 139; Martin v. State, 18 Texas Crim. App., 234; Stroube v. State, 40 Texas Crim. Rep., 583.

We have found nothing in the meaning of the term "Concurrent," as defined in the reported cases or the dictionaries which leads us to conclude that as used in the amendment to the Constitution it was intended that the right of the States to pass appropriate legislation to enforce the prohibition should be more restrictive than the power conferred upon Congress to effect the same result, save that the laws of Congress should affect all the people in the United States, while the laws of the State should affect only those within its boundaries. In the case of Commonwealth v. Nickerson, the Supreme Court of Massachusetts upheld a law in practically the same terms, so far as it relates to the difference of punishment and the definition of intoxicants, as the one attacked in the instant case. Therein it is said:

"The States need not denounce every act committed within their boundaries which is included within the Volstead Act, nor provide the same penalties therefor. It is conceivable also that a State may forbid under penalty acts not prohibited by the acts of Congress. The concurrent power of the States may differ in means adopted, provided it is directed to the enforcement of the Amendment. The fact that Congress has enacted legislation covering in general the field of National prohibition, does not exclude the operation of appropriate State legislation directed to the enforcement by different means of prohibition within the territory of the State."

In our judgment. the presumption obtaining in favor of the validity of an Act of the Legislature is not overcome, either by the reasons advanced or the precedents cited in the forceful and able brief and argument presented by counsel for the relator. In the Dean law are found numerous acts relating to the traffic in intoxicating liquors condemned as offenses. Among them is the unlawful transportation of such liquors, and this is embodied in the indictment. The examina-

tion of the other provisions is not necessary in the disposition of this application for writ of *habeas corpus*. They have not, therefore, been considered, but we have confined our inquiry mainly to the question of the power of the State to enact laws providing penalties against the traffic in intoxicating liquors.

Satisfied that the State may punish the unlawful transportation of intoxicating liquors; as in this instance defined by the state; that in the Act in question it has furnished the means of doing so; and that the indictment charges the relator with the violation of law, his application for writ of *habeas corpus* is denied, and we order that he be remanded to custody.

*Relator remanded to custody.*

DAVIDSON, PRESIDING JUDGE.—I cannot agree to this decision. Some of the conclusions are such that I think ought not to be reached. I have not had time to weigh the opinion as delivered but will as soon as I can do so and write.

LATTIMORE, JUDGE.—I concur in the opinion of Justice MORROW, desiring to add that in the second section of the National Amendment, the grant to Congress and the several States is not of power to enforce by appropriate concurrent legislation, but is of *concurrent power* to enforce by approprite legislation. In other words, that *the power to enforce*, is that which is made concurrent in Congress and the several States, and so long as their respective legislation has for its object the enforcement of the purposes of the Amendment, it need not be identical. It is impossible to conceive concurrent power in two, if one must imitate, follow or yield to the other. Congress, under Federal legislation, must advance to the enforcement of the amendment. With equal dignity and authority must the several States, under State legislation, proceed to accomplish the same end.

### ON REHEARING.

#### February 23, 1921.

HAWKINS, JUDGE.—On the 1st day of December, 1920, in an opinion by Judge MORROW, the application for writ of *habeas corpus* was denied, and relator remanded to custody, and the matter is again before us on motion for rehearing.

Relator in his motion for rehearing urges that some expressions in the former opinion do not make clear his position, and puts him in the light of contending, in effect, that "when the prohibition amendment to the Federal Constitution was adopted, the State surrendered to the Federal government the power to control the liquor traffic," when in fact he avows that such is not his contention, but he concedes

that under Section 2 of the Amendment the States have the concurrent power to act with Congress in passing adequate legislation carrying out the intended meaning of the Eighteenth Amendment, and merely insists that when the field of legislation is occupied by the Federal Congress, that any legislation passed by the States must be consistent with and not antagonistic to the acts of Congress.

Insofar as any expression in the former opinion may have been inaccurate or unhappy in stating the correct contention of relator, we have re-written and modified the same so that such complaint cannot be urged.

Since the filing of relator's motion for rehearing we have again considered the matters urged by him, and while the question raised is one not free from difficulty, we feel that the original opinion made the proper disposition of it. No good could result from a further discussion of the questions, because it would necessarily be largely a repetition of what has already been said by Judge Morrow. In an exhaustive opinion by Chief Justice Rugg the Supreme Court of Massachusetts, in the case of Commonwealth v. Nickerson, has reached the same conclusion as expressed by us in our original opinion, and we do not think a proper construction of the opinion by the Supreme Court of the United States in Rhode Island v. Palmer, 252 U. S., 612, discloses antagonism between that court, and the Massachusetts case and the conclusion we have reached. Whenever the Supreme Court of the United States speaks upon this question, and we should find our views contrary to the ones entertained by that high tribunal, it will be our duty to conform to the opinion of that court. We have been unable to reach the conclusion that it has already so spoken, and the motion for rehearing will be overruled. Such changes and modifications in the original opinion as will eliminate the matters complained of by counsel for relator have already been made.

*Overruled.*

MORROW, Presiding Judge.—The original opinion failed to receive the sanction of Presiding Judge Davidson. He noted his dissent and indicated an intention later to state his reasons therefor.

Full of years and honor possessing the esteem of his countrymen and in love of his associates he died, leaving his purpose unfulfilled.

Upon his desk has been found a pencil memorandum recording his views with reference to the legal questions involved in the case. The memorandum suggests that its review was contemplated. To the end that his thoughts upon the subject may be preserved and recorded with the decision rendered by the court, we herewith attach the memorandum to which reference has been made. This has the concurrence of the entire court.

"Ex parte Gilmore:

"If Rhode Island v. Palmer correctly interprets the Eighteenth Amendment to the Federal Constitution, the late prohibition amend-

ment to the Texas Constitution and the Dean law enacted thereunder
are invalid.

As interpreted, the Eighteenth Amendment 'binds all legislative
bodies, courts, public officers and individuals within those limits, and
of its own force invalidates every act, whether by Congress, by a State
Legislature or by territorial assembly, which authorizes or sanctions
what the section prohibits. The court further holds the Volstead Act
of Congress valid wherein it prescribes the amount of alcoholic strength
at one-half of one per cent. This language is sufficiently emphatic to
convey a definite meaning. It is at least intended to leave no doubt
as to what that Court thought and intended to decide. That renders
the first section of the Eighteenth Amendment sweepingly omnipotent.
All power has been centralized in the Federal government on that sub-
ject except 'concurrent power' to enact 'appropriate legislation' to as-
sist in executing the provisions and purposes of that amendment; such
legislation can neither 'defeat nor thwart' such purposes. The States
cannot deal with the prohibition of intoxicants otherwise, either in
their Constitutions or Legislatures. That amendment limits such power
to the single matter stipulated in the amendment; it takes all other
power from the States. Such 'concurrent power does not mean joint
power or require that the legislation thereunder by Congress to be
effective shall be approved or sanctioned by the several States, or any
of them, nor do they mean that the power to enforce is divided be-
tween Congress and the several States along the lines which separate
or distinguish foreign and intrastate commerce from interstate com-
merce.' While this power in Congress is not exclusive, it is territorially
co-extensive with the jurisdiction of the first section of the Eighteenth
Amendment. It embraces the manufacture, sale, exportation and
transportation of intrastate transactions (the instant case is an intra-
state transaction) ; it embraces interstate commerce as well, and is not
affected and in nowise dependent upon any action or want of action
on the part of the States or any one of them. Rhode Island v. Palmer,
*supra.*

The effect of that decision is that the 'concurrent power' to pass
'appropriate legislation' by the States, must harmonize, and constitutes
congressional action the basis of the harmony. Conflicting legislation
does not harmonize. There must be a superior or controlling Act to
render it possible to carry out the purposes of the Eighteenth Amend-
ment. If the Volstead Act is valid, fixing percentage of alcoholic
volume, it is evident the Dean law is not. The variance between the
two Acts places them in sharp and decided conflict. The State being
deprived of the power to legislate along the lines of intrastate com-
merce, it can only legislate on lines indicated in interstate commerce
transactions. This is placed definitely in Congress.

The question of 'concurrent power' is not novel in Texas. The Legis-
lature has conferred power upon cities to punish some acts as offenses
which are denounced as State offenses. In such cases the municipality

must define and punish as does the State law, otherwise the city ordinance is void. This is but concurrent power with superior authority in the State. Flood v. State, 19 Texas Crim. App., 584; Angerhoffer v. State, 15 Texas Crim. App., 613; Mantel v. State, 55 Texas Crim. Rep., 458; McLain v. State, 31 Texas Crim. Rep., 561; Lynn v. State, 33 Texas Crim. Rep., 159; Ex parte Fagg, 38 Texas Crim. Rep., 587; Ex parte Ogden, 43 Texas Crim. Rep., 532; Ex parte Powell, 43 Texas Crim. Rep., 398; Brown Cracker Co. v. Dallas, 104 Texas, 290, 137 S. W. Rep., 342; Harris Ann. Texas Cons., p. 209, Note 3, for collated cases.

Under Rhode Island v. Palmer the superior authority is in the Federal government. That case so holds. The State being deprived of the power 'along intra-state lines' can act concurrently with Congress along interstate lines. The State cannot act independently of the stipulated 'concurrent power.' To hold otherwise would destroy the Eighteenth Amendment, at least render impossible its enforcement. The State must conform to the Federal law. Rhode Island v. Palmer. Power to legislate in regard to prohibition does not now exist in the State under the Eighteenth Amendment primarily as to intrastate matters or transactions. There can be no prohibition of intoxicants by the State as separate or differently from the Eighteenth Amendment and Federal legislation. If there be a conflict the State loses authority and is subordinated to the Federal government. The operation of the Eighteenth Amendment being general as to all territorial limits, no act of the State can make a regulation operative specially in the State; if so, every State can so legislate, with the result that the regulations would be as diverse from the Federal law as there are States in the Union. It would seem the States must therefore conform to the Federal legislation. This is the effect of the Eighteenth Amendment given in the case, *supra*; that opinion clearly lays down that proposition; it also as clearly decides that the States have fully and completely subordinated themselves to the Federal Constitution and legislation. If that decision does not so decide, it was vainly written.

What I have here said but follows and is in obedience to the decision of the Supreme Court, which is in such matters the controlling authority. The writer, however, desires to say he does not agree that the Eighteenth Amendment is valid, nor was it properly ratified so far as Texas is concerned, and this is doubtless true as to other States.

The Texas Legislature is expressly inhibited from abolishing any provision of the Constitution of Texas. Art 1, Sec. 2; Sec. 29, Art. 1; Art. 17 of the State Constitution. Only the people, at an election held for that purpose, can amend, abolish, alter or reform the State Constitution, as specifically provided in the provisions above cited. Much less has the Legislature power to transfer State sovereignty—the republican form of government. The State even by a vote of the people cannot abolish, alter or reform its Constitution so as to abolish the retained republican form of government. Art. 1, Sec. 2. Not only so,

but the Federal Constitution not only so prohibits, but it guarantees this shall not be done. U. S. Constitution, Art. IV, sec. 4.

The Tenth Amendment to the Federal Constitution expressly retains the representative—republican form of government. The Federal government should protect the States, and is required so to do, in this retained sovereignty. To hold otherwise destroys the State's sovereignty, and centralizes the Federal government into one of autocracy. The rule of 'an indestructible union of indestrucible States, no longer exists. Two agencies of delegated power—the Texas Legislature and Congress—combining, have destroyed state sovereignty and the 'indestructible union' at 'one fell swoop,' assumed original power to the destruction of their principal, the States. The servant is not greater than his master. Congress and the State Legislature act, and can only act under delegated power. Neither have any original power; it is all derived from the States, conferred through the delegation. 'The maintenance of our free institutions and the perpetuity of the Union depend upon the preservation of the right of local self-government unimpaired to all the States' is the basic principle upon which the Federal government was founded. The combined acts of State representatives in Congress with those in the State legislature have destroyed the right of local self-government, and have abolished State sovereignty. It was the immortal Edmund Burke who said: 'This change from an immediate state of procuration and delegation to a course of acting as from original power is the way in which all popular magistracies have been perverted from their purposes.' I do not believe that either Congress or the Texas legislature has this power. It certainly was not contemplated by the States in forming the union, nor by the people in framing our State Constitution, but, as I understand, in both instances expressly withheld and denied such power. The history of these matters has been fully chronicled and is well known. May it not be that 'our own like free States foregone, is but a bright leaf torn from time's dark forest, and in the wild gust thrown to float awhile, by varying eddies borne, and sink at last forever?'

The Texas Constitution provided for prohibition in local option form. Art. 16, Sec. 20. The Volstead Act abolishes this provision under, I may term, the subterfuge of a war measure, and completed its destruction in the ratification of the Eighteenth Amendment. The people were not consulted about this destruction of their reserved sovereignty. The Legislature abolished State sovereignty in direct violation of both Constitutions, State and Federal. This Act of the Texas legislature is void by the express provisions of Art. 1, Sec. 29. It declares 'to guard against transgressions of the high powers herein delegated, we declare that everything in this bill of rights is expected out of the general powers of government and shall forever remain inviolate, and all laws contrary thereto or to the following provisions shall be void.' Art. 1, Sec. 2, ordains: 'All political power is inherent in the people and all free governments are founded on their authority

and instituted for their benefit. The faith of the people of Texas stands pledged to the preservation of a republican form of government, and subject to this limitation only they have at all times the inalienable right to alter, reform or abolish their government in such manner as they think expedient.' Language could not be plainer nor intent clearer to convey sovereign power over the matter specified. Such power was withheld from legislative bodies, State and national, to change, alter, reform or abolish the specified republican form of government. The protection of this power the Federal government was pledged to guarantee in Art. IV, Sec. 4 of the Federal Constitution. Have not these guarantees been set at naught and violated? Did the people of Texas have any voice in the abolition of their sovereignty? Certainly not. It was done by legislative usurpation, by the assumption of power original and to the exclusion of delegation. The Legislature is not the people, and that body can neither make nor unmake Constitutions. They are made by the people. It it but a creature of the people exercising 'inherent power.' The provided method for any change in our State Constitution is by amendment, through a referendum to the people. Art. 17, Texas Constitution. Otherwise it remains as ordained originally by the people.

When the Volstead Act suspended the State Constitution, President Wilson sought to preserve the sovereignty of the States by exercise of the veto power, but was over-ridden by a vote of Congress. This act was dependent upon the contingency of a signed treaty with Germany. To avoid the transitory nature of this act the Eighteenth Amendment was placed in the Federal Constitution. That the Texas legislature could neither suspend nor abolish the State Constitution has been definitely settled by the courts. A late and thoroughly considered case is Ex parte Meyer, 84 Texas Crim. Rep., 288, 207 S. W. Rep. 100. That was the controlling question in that case. The attorney General of Texas urgently insisted the Legislature had authority to suspend Art. 16, Sec. 20, both as a war measure and under the police power of the State. These contentions were held unsound and without plausibility. The reasoning of Judge Morrow on that question is unswerable.

The main difference between the Texas Constitution and that of Ohio, as stated in Ohio v. Cox, 257 Fed. 334-5, is that in Texas the referendum is a condition precedent, while in Ohio it is a condition subsequent. I shall not discuss that matter, though it may be of importance.

That the State of Texas has been deprived illegally of its inherent power, and its republican form of government destroyed, by the Eighteenth Amendment, ought not to be questioned as the matter now stands. To argue otherwise seems to the writer to be a travesty on words, based on evasive casuistry. The above observations express to some extent the belief and opinion of the writer, and are stated with all due deference to the great courts who have written otherwise.

In the instant case the State urges the Rhode Island case does not announce a correct decision. We are further asked to hold that Texas has the authority to pass laws that are inconsistent with the Eighteenth Amendment and the Volstead Act, on the theory that the Texas legislature can enact any law which aids the abolishment of the manufacture or sale of intoxicants, though inconsistent with the Federal amendment and legislation.

The applicant relies upon the decision in the Rhode Island case. Having expressed my own views, I shall follow the Supreme Court in its decision inasmuch as that Court is supreme in deciding Federal questions, and its decisions binding upon State courts on such questions. The Rhode Island case is decided purely upon prohibition. The war measure feature seems to have been ignored; it was doubtless thought unnecessary in the light of the Eighteenth Amendment. The friends of the Volstead Act and the Eighteenth Amendment there contended for the superiority of the Federal control of prohibition, and were awarded a favorable decision. They ought not now, in good faith, to ask the State courts to hold otherwise. They secured Federal intervention, to the exclusion of the States, and ought not to be heard to disavow heir own act. They secured a transfer of the dominancy of the question from the State, and should abide the result. If that transfer was invalid the Rhode Island decision is wrong, but the Supreme Court upheld it. The subsequent adoption by Texas people of state-wide prohibition cannot avail, as the question stands decided. The Volstead Act suspended Art. 16, Sec. 20; and the ratification of the Eighteenth Amendment, that article and section. There was, therefore, nothing to amend. An abolished constitution or a repealed law are not the subjects of amendment. Amendments can only be had to an existing constitutional provision or law. The vote of the people was therefore futile to resurrect and amend the abolished constitution. There was nothing to amend. Not only so, but all power over the subject had been transferred to the Federal government as embraced in the Eighteenth Amendent.

The Dean law was enacted to carry out and render effective the amendment to the State Constitution, not the Federal Constitution. This was not permissible. The power of the State to enact intrastate prohibition does not now exist independent of the Federal Constitution. State legislation on this subject only exists in aid of Federal control. The theory of the Dean law is that it could control intrastate prohibition as the State did intra-commerce. This is exactly what the Supreme Court said could not be done. This control of the question cannot exist in both separately as to interstate and intrastate commerce. All power of control from an intrastate standpoint was abolished by the Eighteenth Amendment, leaving no original power in the State over the subject. The Federal amendment was adopted for the express purpose of removing prohibition from the States to the Federal government, and enlarging the territory of its operation. The States'

territory was too restricted. A larger field was sought and obtained. Therefore it was necessary to make governmental control commensurate. The Federal government alone could do this, the State's authority being too restricted. The original power of the States over the question passed with the ratification of the Eighteenth Amendment as completely as did Esau's birthright over the mess of pottage. Doubts, if any there be, have been resolved in favor of the grantee, the Federal government. Rhode Island v. Palmer, *supra.* Cox v. Ohio, *supra.* The conflicts between the Federal laws and the Dean Act for the same reasons will be resolved in favor of the Volstead Act. Same cases, *supra.* That these conflicts exist is manifest from the language of the two acts: illustration: the Dean law defines intoxicants as containing one per cent alcoholic strength; the Volstead act as containing only one-half of one per cent. The Dean act authorizes sale of liquors double in strength to those interdicted by the Volstead act. These provisions are irreconcilable. They are not concurrent. They do not run in harmony. They are diverse and conflictingly adverse. The two laws do not concur when they nullify each other; their effect is destruction, not concurrent upholding. The citizen may plead immunity from prosecution under the Dean law if the liquor does not contain over one per cent alcoholic strength; for the same act under the Volstead law the citizen may be punished if the liquor contains in excess of one-half of one per cent alcohol. Under one law he can be punished for the thing for which the other law holds him guiltless. One law must be superior or they both fall; they cannot both stand. Two conflicting laws cannot occupy the same territory at the same time. Such legislation is not concurrent; the required harmony is destructively out of unison.

The two laws are in direct conflict in regard to punishment. The Dean law prescribes felony punishment, the Volstead Act, is a misdemeanor. The Dean law punishment carries infamy, deprivation of civil rights and disqualification of the right of suffrage; the Volstead Act does none of these things. This is hopeless conflict. It may be that the Dean law enhances punishment because it authorizes intoxicants of higher percentage. I do not care to discuss other conflicts as shown by the two Acts; the two mentioned are fully sufficient to demonstrate the irreconcilable conflicts. Rhode Island v. Palmer is authority for the supremacy of the Federal laws.

I desire to present another question. The Eighteenth Amendment prohibits only the manufacture, sale or transportation of intoxicants for traffic or sale purposes. It does not debar, nor undertake so to do, the citizen's right to have, transport or use intoxicants as it pertains to him individually, and so long as he does have it for such purposes as specified in the amendment he is guiltless of its violation. It only deals with him in relation to others; so long as he does not manufacture it for sale, or does not sell, or does not transport it for illegal purposes he is not subject to prosecution. Coleman v. State, 87 Texas

Crim. Rep., 240; 220 S. W. 1079; Street v. Lincoln Safe Deposit Co., Sup Ct. Advance Opinions, No. 2, p. 7. (The Dean act is at variance with the Federal act on this question, and therefore illegal). The Eighteenth Amendment does not deal with, nor seek to deal with personal habits, tastes, customs·or even vices of the citizen; it is only his relations to others the Amendment affects or interdicts.

Again, the Eighteenth Amendment only deals with intoxicants when manufactured, sold or transported for beverage purposes. The State amended Constitution prohibits only when the intoxicant is 'capable of producing intoxication.' It would be idle to discuss the possibility of one-half of one per cent alcoholic liquors as being capable of producing intoxication.' This is the criterion set forth in the State amended Constitution. It is, in effect, the definition there specified. Any definition of the Legislature contrary to this provision would be necessarily unauthorized. The Legislature cannot suspend or alter the Constitution. Harris Ann. Constitution, p. 218, note 41; p. 215, note 23; page 217, note 34.

The definition of alcoholic liquors at one-half of one per cent volume went into effect upon the approval of the Volstead Act, and was in effect when the Eighteenth Amendment was ratified. This was continued in effect, see title of that Act, as were sections 27, 37 and 38. Titles 1 and 111 also went into effect at the date of approval. The ·date of approval was when the veto of the President was overridden by Congress. The remaining sections of title 117 of that Act went into effect when the Eighteenth Amendment was ratified. The ratification adopted and rendered effective all sections of the Act. This Act of Congress being thus ratified became as binding as did the Eighteenth Amendment; it became the act of all the States and binding upon them. It placed it beyond the power of the States to annul or qualify the provisions of that act. The ratification was that of the Act of Congress and will remain in vogue until repealed or changed by Congress. This was the method by which the Eighteenth Amendment was to operate until Congress changed it. Having been adopted by the three-fourths of the States it could not be repealed or substituted by one of the States; it placed in Congress alone the power to change those provisions. It took three-fourths of the States to ratify the Amendment, which determined the date of the effectiveness of the Act of Congress, and that effect could not be changed by one State. The intrastate feature had been abrogated; it passed into the Federal government as applicable to all its territorial limits. This being true, the one-half of one per cent volume could not be abolish by any State; its intrastate powers had ceased; it had been merged into congressional and national authority. The authority of the States by ratification of the Eighteenth Amendment was merged. .This definition then became the act of all the States and must so remain until changed by Congress, in which the ratification had lodged the superior power. No State can change this.

Under Rhode Island v. Palmer the applicant, it seems to me, was entitled to his discharge from custody."